**Nos. 15-2075 & 15-2127**

# In the
# United States Court of Appeals
## for the Sixth Circuit

SETARA TYSON,

*Plaintiff-Appellee/Cross-Appellant,*

v.

STERLING RENTAL, INC., dba Car Source,

*Defendant-Appellant/Cross-Appellee,*

and

AL CHAMI, RAMI KAMIL,

*Defendants.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor, No. 5:13-cv-13490.
The Honorable **Judith E. Levy**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLANT/CROSS-APPELLEE
## (FIRST BRIEF)

ZIYAD KASED
KASED LAW
631 E. Big Beaver Road, Suite 205
Troy, Michigan 48083
(248) 680-7300

*Attorney for Defendant-Appellant/Cross-Appellee*
*Sterling Rental, Inc. dba Car Source*



COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER



UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __15-2075, -2127__          Case Name: __SeTara Tyson v. Al Chami, et al.__

Name of counsel: __Ziyad Kased__

Pursuant to 6th Cir. R. 26.1, __Sterling Rental Inc., dba Car Source__
*Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ November 3, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ __Ziyad Kased__
__631 E. Big Beaver Rd., Ste. 101__
__Troy, MI 48083__

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS............................................................ ii

TABLE OF AUTHORITIES .................................................. iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................v

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ..................................................1

CONCISE STATEMENT OF THE CASE ............................................2

SUMMARY OF THE ARGUMENT ......................................................4

ARGUMENT    ..................................................................4

STANDARD OF REVIEW ........................................................4

     A.    Ms. Tyson's Attorney, Mr. Ian Lyngklip, Lied Under Oath, as Attorney of Record in This Case and as an Officer of the Court..........7

     B.    Mr. Lyngklip's Prior Conduct Was Ignored by The Trial Court........10

     C.    Mr. Lyngklip's rush to file suit just four days after the contract was signed was designed to lock him into a quest for attorney fees rather than settle Ms. Tyson's case at the outset ........................17

CONCLUSION    ..................................................................20

## <u>TABLE OF AUTHORITIES</u>

*Brown v. Stackler*,
  612 F.2d 1057 (7th Cir. 1980) ................................................................11, 13, 20

*Burlington v. Dague,*
  505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).......................................5

*Copeland v. Marshall,*
  205 U.S.App.D.C. 390, 641 F.2d 880 (1980) .........................................................6

*Coulter v. State of Tenn.*,
  805 F.2d 146 (6th Cir. 1986) .............................................................................14

*Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd.,*
  659 F. Supp. 2d 877 (N.D. Ohio 2009)................................................................14

*Gisbrecht v. Barnhart,*
  535 U.S. 789, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002).......................................4

*Hensley v. Eckerhart,*
  461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)...........................................5

*McCain v. Detroit II Auto Fin.* Ctr.,
  378 F.3d 561 (6th Cir. 2004) .......................................................................11, 19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
  478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)....................................5, 12

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010)  .............................5, 12

*Romero-Barcelo v. Acevedo-Vila,*
  275 F. Supp. 2d 177, 181 (D.P.R. 2003)................................................................7

*Shields v. Merchants & Med. Credit Corp.*,
  No. 08-14999, 2011 WL 3566485 (E.D. Mich. June 30, 2011) ...........v, 12, 18, 19

*Shields v. Merchants & Med. Credit Corp.*,
  No. 08-14999, 2011 WL 3648425 (E.D. Mich. Aug. 15, 2011) ..........v, 12, 18, 19

**Rules, Statutes & Oher Authority**

28 U.S.C. § 1291 ..................................................................................1

S.Rep. No. 94–1011, p. 6 (1976) ..........................................................6

https://www.fbi.gov/buffalo/press-releases/2014/michigan-man-sentenced-for-making-false-statements accessed October 30, 2015 ...............................................9

http://www.michiganconsumerlaw.com/ accessed on June 5, 2015 ........................8

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

This case involves a district court improperly granting $57,000 which is a windfall for the attorney. The attorney cross appeals and seeks an absurd $105,000. Mr. Lyngklip is well known in the Eastern District of Michigan for his gamesmanship in filing and prosecuting consumer protection cases and for his "culpability" in extending the litigation and instructing his client to tape record conversations with the defendants creating claims and seeking unreasonable attorney fees. *Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3566485, at *5 (E.D. Mich. June 30, 2011) *report and recommendation adopted sub nom. Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3648425 (E.D. Mich. Aug. 15, 2011). The trial court completely ignored Mr. Lyngklip's culpability even though Car Source made the argument. Mr. Lyngklip submitted an attorney fee application which was manifestly unreasonable and unintelligible, as found by the court. His fee application should have been denied on its face once it was submitted.

Here Mr. Lyngklip seeks attorney fees that would total nearly nine times the total award to Ms. Tyson. He clearly fits the pattern of an attorney who over-inflates his fee applications believing that the court will at most reduce his fee to what he would have sought in the first place.

## JURISDICTIONAL STATEMENT

On May 25th, 2015, Ms. Tyson filed her motion for attorney's fees. After contested brief, the Court issued its Order granting Tyson Attorney's Fees on August 18th, 2015. Order granting attorney fees, R 80, Pg ID 1239 – 1257. On September 8, 2015, Car Source timely filed its Notice of Appeal. R 84, Pg ID 1280 Ms. Tyson filed her Notice of Cross Appeal.  Certificate of service of notice of appeal, R 86, Pg ID 1289.  On September 17th, 2015 Ms. Tyson her Cross Appeal. Notice of appeal, R 88, Pg ID 1291.

The order granting attorney's fees is a final, appealable order pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Whether an attorney who lies on his fee application should be awarded  any fees at all.

Appellant says YES
Appellee says   NO
Court says      NO

Whether an unintelligible fee application should be denied outright.

Appellant says YES
Appellee says   NO
Court says      NO

1

## <u>CONCISE STATEMENT OF THE CASE</u>

The Attorney in this case prevailed on just three of twelve counts in his complaint. The Court did not award fees for the four conversion counts. She reduced the award by 20% when it should have been reduced by 33% (4 of 12 counts. Mr. Lyngklip has represented people in consumer protection cases in nearly 300 cases in the Eastern District over the past 15 years. He certainly knows how to write a documented fee application. Nearly 350 billable hours, for a case which never went to trial is clearly excessive especially when the Motions for Summary Judgment were decided without oral argument and the attorney lied under oath as an attorney and an officer of the court. No fee should have been provided. The court found his application and documentation unintelligible. The court let him resubmit the document when it should have denied the fee application outright.

On May 25th, 2015, Ms. Tyson filed her motion for attorneys' fees. Motion for Attorney's Fees, R 70, Pg ID 1055. She asked for 344.94 billable hours for a total award of $105,055.75. *Id.* On June 9th, 2015, Defendants filed their Response. CAR Source Response, R 73, Pg ID 1157. On June 11th, 2015, Ms. Tyson filed her Reply. On June 12th, 2015, rather than rule on the motion, the Court issued an Order Requiring Resubmission of Exhibit because R. 70-4 was unintelligible.

Order to re-submit exhibit documenting attorney fees, R. 75, Pg ID 1198, 1199 and 1200.

On June 20th, 2015, the Court entered a Text Only Order requiring Car Source to respond to the new exhibit within seven days and limiting the Response to five pages. On June 26th, 2015 Ms. Tyson submitted her new exhibit. Tyson re-submitted exhibit, R 76, Pg ID 1201 – 1225. On July 2nd, 2015, Car Source asked for reconsideration of the court's text only order. Motion for reconsideration, R 77, Pg ID 1228 – 1229. On July 6th, 2015, the court denied Car Source's motion for reconsideration. R 78, Pg ID 1230 -1233)

On July 9th, 2015, Car Source filed its response to Ms. Tyson's new, resubmitted documentation. Car Source Response, R79, Pg ID 1234 – 1238. The Court issued its Order granting Tyson Attorney's Fees on August 18th, 2015. Order granting attorney fees, R  80, Pg ID 1239 – 1257. On September 8, 2015, Car Source timely filed its Notice of Appeal. R 84, Pg ID 1280 Ms. Tyson  filed her Notice of Cross Appeal. Certificate of service of notice of appeal, R 86, Pg ID 1289. On  September 17th, 2015 Ms. Tyson her Cross Appeal. Notice of appeal, R 88, Pg ID 1291.

## SUMMARY OF THE ARGUMENT

The fee application asks for over $105,000 for 344 billable hours. This attorney, Mr. Lyngklip has had his fee app reduced by one half because of his "culpability" and clearly excessive hours. This was also a case in the Eastern District of Michigan and was cited to the Court below.

Ms. Tyson's Attorney, Mr. Ian Lyngklip, Lied Under Oath, as Attorney of Record in This Case and as an Officer of the Court. To award him any fees would encourage other such attorneys to lie on their fee application because the court would consider the lie as having no consequence.

Ms. Tyson's rush to file a complaint just four days after the contract was signed, rejecting arbitration or any type of resolution at all demonstrates this case was filed and fueled by his quest for attorney fees. He asks for fees about nine times the award to his client.

## ARGUMENT

## STANDARD OF REVIEW

The lodestar approach has "achieved dominance in the federal courts." *Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Although imperfect, it has several important virtues: It produces an award that approximates the fee the prevailing attorney would have received for representing a paying client who was billed by the hour in a comparable case; and

4

it is readily administrable, see, *e.g., Burlington v. Dague,* 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), and "objective," *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), thereby cabining trial judges' discretion, permitting meaningful judicial review, and producing reasonably predictable results. Pp. 1671 – 1673.

The Supreme Court has established six important rules that lead to today's decision. First, a "reasonable" fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case, see *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), but that does not provide "a form of economic relief to improve the financial lot of attorneys," *ibid. \* Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542-43, 130 S. Ct. 1662, 1667-68, 176 L. Ed. 2d 494 (2010) . The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise **1940 unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked, see *supra,* at 1939–1940, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

This case involves a district court improperly granting $57,000 which is a windfall for the attorney.   The attorney cross appeals and seeks an absurd $105,000.

### A. Ms. Tyson's Attorney, Mr. Ian Lyngklip,  Lied Under Oath, as Attorney of Record in This Case and as an Officer of the Court.

[W]e will not shirk our responsibility to enforce the highest standards of ethical conduct for any individual who wishes to practice before this Federal District Court.

> It is a fair characterization of the lawyer's responsibility in our society that he stands "as a shield," ... in defense of right and to ward off wrong. From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as "moral character." *Schware v. Bd. of Bar Exam's,* 353 U.S. 232, 247, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).

*Romero-Barcelo v. Acevedo-Vila*, 275 F. Supp. 2d 177, 181 (D.P.R. 2003)

"Ian B. Lyngklip makes the following statement under oath as an attorney of record and officer of the court." Attorney Declaration in support of attorney fees, R 70-2, Pg ID1088.  "I have billed my work at the rate of $400 per hour in this case which is the rate that regularly contract with my clients to pay for individual work in the federal court system.  *Id.* at Para. 5.  "I do not accept cases in federal court at a reduce (sic) rate, and have sufficient business to reject any lesser paying clients." *Id.* at Pg ID 1079, Para. 6.

7

He repeated his lie in his brief.  The Court chose to ignore this and did not even mention it.  Although Car Source demonstrated Attorney Lyngklip's lie on his under oath declaration, the trial court was not concerned.

"At a starting point, Lead Counsel for Ms. Tyson customarily charges $400 for consumer work for individual cases, and clients seeking his services for the last several years have agreed to pay that rate.  This is the rate that counsel commands in the market place for individual case work, and he does not accept any federal court work for a lesser fee at this time."   R 70, fee application, Pg ID 1068 – 1069.

Knowing that the whole purpose of the fee shifting statute is to approximate the fee that a client would pay on an hourly basis, he lied and the lie goes right to the heart of his fee application.  For his lie alone, no award should have been given.  He committed perjury.  And the Court gave him no consequence for lying on his fee application and in his brief. The lie is demonstrated on Mr. Lyngklip's own web site.

### What are my rights if I am the victim of auto financing fraud?

If you are dealing with any of these issues, give us a call right away. Auto finance fraud is an especially urgent situation. Do not allow yourself to be pushed around by an auto dealer who is already savvy in manipulating buyers. Contact us right away.

Contact Lyngklip & Associates Consumer Law Center and discover what we can do for you. Call (248) 208-8864 to discuss your matter. We represent clients on contingency in almost all matters, meaning there are no out-of-pocket costs to you.

http://www.michiganconsumerlaw.com/ accessed on June 5, 2015

People, ordinary people, go to jail for making false statements. The following text was released by the U.S. Attorney's Office for the Western District of New York on January 24th, 2014.

> BUFFALO, NY—U.S. Attorney William J. Hochul, Jr. announced today that Michael T. Henson, 51, of Fowerville, Michigan, who was convicted of making false statements, was sentenced to 18 months in prison by District Court Judge Richard J. Arcara. The judge also ordered the defendant pay restitution in the amount of $127,091.08 to the victims in this case.
>
> Assistant U.S. Attorney Aaron J. Mango, who handled the case, stated that defendant was contracted to transport an interstate shipment of 20 tons of copper and brass via tractor trailer from Buffalo, New York, to Lonoke, Arkansas, and Midland, Texas. The shipment was valued at approximately $130,000. On June 22, 2010, Henson picked up the shipment in Buffalo, but it was never delivered to its intended recipients. On July 13, 2010, the defendant had a telephone conversation with a special agent of the Federal Bureau of Investigation from Buffalo regarding the missing shipment. Henson stated that he dumped the load of copper he was hauling along a rural road near West Memphis, Arkansas, when in fact, he had not. Cellular telephone records for the defendant revealed that during the relevant time period, Henson did not travel to the state of Arkansas.
>
> The conviction is the culmination of an investigation on the part of special agents of the Federal Bureau of Investigation, under the direction of Special Agent in Charge Brian P. Boetig.

https://www.fbi.gov/buffalo/press-releases/2014/michigan-man-sentenced-for-making-false-statements accessed October 30, 2015

Attorney Lyngklip's lie, never corrected should not be rewarded with any fees at all.

**B. Mr. Lyngklip's Prior Conduct Was Ignored by The Trial Court**

Mr. Lyngklip is well known in the Eastern District of Michigan for his gamesmanship in filing and prosecuting consumer protection cases and for his "culpability" in extending the litigation and instructing his client to tape record conversations with the defendants creating claims and seeking unreasonable attorney fees.

> Moreover, Plaintiff's counsel is not without sin when it comes to gamesmanship. Under the direction of counsel, the Plaintiff recorded two telephone calls to the Defendant. Those conversations led to the Plaintiff's claim for statutory damages. *Yet, for his own strategic reasons, and contrary to the spirit of Rule 26, which contemplates full discovery, counsel elected not to divulge the recordings in their entirety.*[6]

*Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3566485, at *5 (E.D. Mich. June 30, 2011) *report and recommendation adopted sub nom. Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3648425 (E.D. Mich. Aug. 15, 2011) (Emphasis supplied).

> Based on Plaintiff's very limited success *and his own partial culpability* in extending the litigation, and comparing this case to similar consumer cases, I find that the claim for 292.18 hours is excessive and unreasonable. In computing a lodestar amount, it would therefore be appropriate to reduce the claimed attorney hours by 50%. At $300 per hour, this would result in a total attorney fee of $43, 827.00.

*Shields*, supra, at *7 (Emphasis supplied)

The trial court completely ignored Mr. Lyngklip's culpability even though Car Source made the argument.  Mr. Lyngklip lied, under oath, as attorney of

record in this court and as an officer of this court. Mr. Lyngklip submitted an

attorney fee application which was manifestly unreasonable.  His fee application

should have shocked the conscience of the Court.  One of his other fee applications

was rejected by the trial court in the Eastern District of Michigan and the attorney

was even rebuffed by the 6th Circuit.  The 6th Circuit denied him attorney fees of

any kind stating:

> Nothing in the terms of Detroit II's Rule 68 offer justified McCain's effort to
> have the tail wag the dog by seeking an attorney's fees recovery of fully two
> and one-half times the amount of the substantive judgment. For the reasons
> we have stated, we **AFFIRM** the district court's rejection of that claim

*McCain v. Detroit II Auto Fin.* Ctr., 378 F.3d 561, 566 (6th Cir. 2004)

Here Mr. Lyngklip seeks attorney fees that would total nearly nine times the

total award to Ms. Tyson.  He clearly fits the pattern of an attorney who over-

inflates his fee applications believing that the court will at most reduce his fee to

what he would have sought in the first place.

> If, as appellant argues, the Court were required to award a reasonable fee
> when an outrageously unreasonable one has been asked for, claimants would
> be encouraged to make unreasonable demands, knowing that the only
> unfavorable consequence of such misconduct would be reduction of their fee
> to what they should have asked for in the first place. To discourage such
> greed a severe reaction is needful, and the District Court responded
> appropriately in the case at bar.

*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)

The purpose of a fee application is to attract competent counsel to represent an individual with a *meritorious* case, see *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), but that does not provide "a form of economic relief to improve the financial lot of attorneys," *ibid.*   *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542-43, 130 S. Ct. 1662, 1667-68, 176 L. Ed. 2d 494 (2010).   The purpose of the lodestar formula is to approximate the fee a client would pay for representation in the case.   There is the fact, ignored by the District Court that Mr. Lyngklip has a record of having requested slashed in half. *Shields, supra.*

Even though Fee Applications, by Local Court Rule, are to be filed within 14 days of entry of Judgment, Plaintiff's Attorney was given 60 days to submit his fee application.  The District Court in its order called it unintelligible, the Court did not deny the application outright.  Rather, it Ordered Mr. Lyngklip to resubmit one of his exhibits.  The Court permitted Defendant only five days to respond and limited the response to 5 pages, saying that Defendant should have used all the arguments in its initial brief and the court would not let Defendant "mulligan" its response.  Defendant asked the court to deny the motion outright or let Defendant have more time and the standard length of pages to properly address the new exhibit. Clearly, the initial motion and supporting was outrageously unreasonable. It demonstrated the greed of the Attorney requesting the fee.  The Court's actions

12

that resulted in a reduction of the attorney fees Mr. Lyngklip asked for by about half. This practice of permitting claimants to make unreasonable demands with no supporting documentation that could be interpreted by Defendant or the Court reducing the amount awarded by about half, encourages Mr. Lyngklip and other Plaintiff's attorneys to make unreasonable demands on their fee applications without intelligible documentation knowing that the only unfavorable consequence of such misconduct would be *reduction of their fee to what they would have asked for in the first place.*

The court took no action to discourage the unsupported and unreasonable attorney fees submitted by Mr. Lyngklip. No fees should have been awarded on the basis of such an outrageous fee application. The Court should have immediately taken a harsh reaction, awarding no fees whatsoever, in order to discourage such greed and misconduct as that displayed in Mr. Lyngklip's initial fee application.

> If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severe reaction is needful, and the District Court responded appropriately in the case at bar.

*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

The trial Court granted Attorney fees of $57,000. The amount requested was $105,000. This is clearly a windfall for the attorney.

The Congressional intent behind attorney fee statutes is to encourage lawyers to bring successful meritorious civil rights or consumer protection cases, not to encourage successful attorney fee cases.

> *The* legislative intent behind attorney fee statutes, however, was to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases. The attorney fee case is not the case Congress expressed its intent to encourage; and in order to be included, it must ride piggyback on the civil rights case.

*Coulter v. State of Tenn*., 805 F.2d 146, 151 (6th Cir. 1986)(Emphasis supplied)

Accord *Disabled Patriots of Am., Inc. v. Reserve Hotel, Ltd*., 659 F. Supp. 2d 877, 891 (N.D. Ohio 2009).

> Such guidelines and limitations are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id.*

They are further clearly a fraud upon the court for which no attorney fees should be granted. He has practiced in this area for the past 15 years, he is a specialist in this particular area of the law. He knows what documentation must be submitted in a fee application. Yet, he uses this fee application surreptitiously to improve his own financial lot as an attorney, to provide a windfall for him as an

attorney, and to claim fees that he would not charge to his client, Ms. Tyson, all of which violate the established framework of the Lodestar formula.

Case in point, in his fee application Lyngklip himself claims 58.7 hours in a 24 hour day because if we multiply his hourly rate 400 times 58.7 it equals the amount claimed by Plaintiff for that day $23,480 to the penny. Next day he came in again and put in another 3 hours in for an additional $1200. No one states it who did the work or what was done. This is pure deceit and fraud. The Court cannot ignore this conduct from a member of the bar.

"At a starting point, Lead Counsel for Ms. Tyson customarily charges $400 for consumer work for individual cases, and clients seeking his services for the last several years have agreed to pay that rate. This is the rate that counsel commands in the market place for individual case work, and he does not accept any federal court work for a lesser fee at this time." R 70, Pg ID 1068 – 1069.

Attorney Lyngklip's statement in the fee application contradicts his web site info. Let him produce the agreement for Ms. Tyson and the hourly rate agreements he has had in the past several years. This appears to be another deception. His web site openly proclaims he does contingency work and does not charge hourly fees to any clients.

Here, we have a 12 count complaint. The four counts of conversion against Car Source Kamil and Chami were dismissed on Summary Judgment. Plaintiff

15

won SJ on three counts against just one out of the three defendants. There was just one injunction against one defendant no injunctive relief was permitted against two of the named defendants.

Plaintiff failed on any of its treble damages claims. That left 5 counts. The parties settled the remaining 5 leaving no prevailing party in a settlement. So, out of the 12 counts against three defendants Plaintiff prevailed on 3 counts and Two of the defendants won their motion for summary judgment and the remaining defendant won its motion for summary judgment on the conversion count. Defendant prevailed on 4 counts.

The parties settled the remaining counts. Plaintiff prevailed on just 3 of the 12 counts. The fee application totals are found in Exhibits 1 and 2 attached. Although Petitioner claims he uses a "blended rate" he did not do so on either of the exhibits. He stopped using time slips on April 7th, 2014  R70-4  consists of 6 pages which contain no name of the person performing the task, and absolutely no description of the task It also does not supply the hourly rate.  The most shocking part of this exhibit is the May 23, 2015 entry claiming 58.70  hours in that one 24 hour day period.  When the blended rate of $304.56 is used the result is 17877.67 yet plaintiff claims it is owed $23,480 for that single day.  Clearly, the blended rate was not even used in this calculation.  But applying Mr. Lyngklip's hourly rate of

$400 we get the amount claimed to the penny. This is a clear attempt to deceive the Defendant and the court.  It is a fraud.

   R 70-4 is an amalgam of two separate exhibits the first eight pages and then another type of documentation going from page 9 of 16 through page 16 of 16. Those documents do not specify who worked or what the task was.  As such these hours must be ignored.   These documents show that 272.62 billable hours. Amount due is claimed to be $83,344.00.  There is absolutely no designation of who performed the work.  There is also no indication of the hourly rate being applied.  Although Exhibit Numbers are referenced at the table of exhibits no exhibit had an exhibit number next to it.

## C.  Mr. Lyngklip's rush to file suit just four days after the contract was signed was designed to lock him into a quest for attorney fees rather than settle Ms. Tyson's case at the outset.

   Ms. Tyson lied on her application on August 10th, 2013. On August 12th, she was asked to sign a new application and a new contract based upon her true information or Car Source would sue her. That day she voluntarily dropped off the car and agreed to a new contract.  Instead On August 14th, she met her attorney who, that day, filed a federal 12 count complaint, claiming no ECOA adverse notice was given to her within 30 days, when there were still 26 days for such notice.  Car Source asked her to pick up her car just 6 days later and she testified that she would not under the advice of her attorney.

17

In point of fact, neither Ms. Tyson, nor her attorney filed any administrative complaint against Car Source concerning "spot delivery" or a violation of the MVSFA or the CRA. There would be no attorney fees in filing an administrative complaint. Ms. Tyson's attorney wrote a rejection of arbitration whereby Ms. Tyson purportedly, on her own letterhead, rejected a chance to resolve her complaint rather than file a lawsuit on the same day she met with Mr. Lyngklip. Of course, no attorney fees are available in arbitration. Under oath, at her deposition, Ms. Tyson testified that she knew nothing of arbitration, period.

Ms. Tyson's Attorney, Mr. Lyngklip has a history of filing this type of case before making any effort to reach a resolution. Mr. Lyngklip is well known in the Eastern District of Michigan for his gamesmanship in filing and prosecuting consumer protection cases and for his "culpability" in extending the litigation and instructing his client to tape record conversations with the defendants creating claims and seeking unreasonable attorney fees.

> Moreover, Plaintiff's counsel is not without sin when it comes to gamesmanship. Under the direction of counsel, the Plaintiff recorded two telephone calls to the Defendant. Those conversations led to the Plaintiff's claim for statutory damages. *Yet, for his own strategic reasons, and contrary to the spirit of Rule 26, which contemplates full discovery, counsel elected not to divulge the recordings in their entirety.*[6]

*Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3566485, at

*5 (E.D. Mich. June 30, 2011) *report and recommendation adopted sub nom.*

18

*Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3648425

(E.D. Mich. Aug. 15, 2011) (Emphasis supplied).

> Based on Plaintiff's very limited success *and his own partial culpability* in extending the litigation, and comparing this case to similar consumer cases, I find that the claim for 292.18 hours is excessive and unreasonable. In computing a lodestar amount, it would therefore be appropriate to reduce the claimed attorney hours by 50%. At $300 per hour, this would result in a total attorney fee of $43, 827.00.

*Shields*, supra, at *7 (Emphasis supplied)

The trial court completely ignored Mr. Lyngklip's culpability even though Car Source made the argument. Mr. Lyngklip submitted an attorney fee application which was manifestly unreasonable. His fee application should have shocked the conscience of the Court. One of his other fee applications was rejected by the trial court in the Eastern District of Michigan and the attorney was even rebuffed by the 6th Circuit. The 6th Circuit denied him attorney fees of any kind stating:

> Nothing in the terms of Detroit II's Rule 68 offer justified McCain's effort to have the tail wag the dog by seeking an attorney's fees recovery of fully two and one-half times the amount of the substantive judgment. For the reasons we have stated, we **AFFIRM** the district court's rejection of that claim

*McCain v. Detroit II Auto Fin. Ctr.*, 378 F.3d 561, 566 (6th Cir. 2004)

Here Mr. Lyngklip seeks attorney fees that would total nearly nine times the total award to Ms. Tyson. He clearly fits the pattern of an attorney who over-

inflates his fee applications believing that the court will at most reduce his fee to what he would have sought in the first place.

> If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severe reaction is needful, and the District Court responded appropriately in the case at bar.

*Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)

Ms. Tyson testified that she did not know what arbitration was or that she had declined arbitration. The letter was prepared by her attorney on her own letterhead, as if she had one, but was actually created by her attorney, Mr. Lyngklip. This case was carefully orchestrated by an attorney, Ian Lyngklip, well known in the Eastern District of Michigan and even in the 6th Circuit Court of Appeals. Ms. Tyson came to Car Source for the fourth time on a Saturday, August 10th, 2015. But not for the industry wide practice of 'spot delivery' Ms. Tyson could not have purchased a car on Saturday because no financing could have been accomplished.

## **CONCLUSION**

Attorney Lyngklip's lie, never corrected, should not be rewarded with any fees at all. Here Mr. Lyngklip seeks attorney fees that would total nearly nine times the total award to Ms. Tyson. He clearly fits the pattern of an attorney who

over-inflates his fee applications believing that the court will at most reduce his fee to what he would have sought in the first place. The Court in its discretion was not required to award a reasonable fee when an outrageously unreasonable one has been asked for. Simply reducing an unintelligible, outrageous fee like the one at issue here, encourages other claimants to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severe reaction is needful, and the District Court should have responded appropriately in the case at bar.

Mr. Lyngklip has practiced in this area for the past 15 years, he is a specialist in this particular area of the law. He knows what documentation must be submitted in a fee application. Yet, he uses this fee application surreptitiously to improve his own financial lot as an attorney, to provide a windfall for him as an attorney, and to claim fees that he would not charge to his client, Ms. Tyson, all of which violate the established framework of the Lodestar formula.

Respectfully Submitted,

/s/Ziyad Kased
KASED LAW, PLLC
Ziyad Kased (P72237)
Attorney for Appellant
631 E. Big Beaver Road, Suite 101
Troy, MI 48083
(248) 680-7300
(248) 680-7301 FAX

## **CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) OR 32(a)**

I hereby certify that this document, including all headings, footnotes and quotations, but excluding the Disclosure Statement, Statement Regarding Oral Argument, the Table of Contents, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 5,175 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2010 in Times New Roman 14 point font, which is no more than 14,000 words permitted under Fed.R.App.P. 32(a)(7)(B)(i).

/s/Ziyad Kased

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 4, 2015, an electronic copy of the Brief of Defendant-Appellant/Cross-Appellee (First Brief) was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that participants who are registered CM/ECF users will be served via the CM/ECF system.

/s/Ziyad Kased            

## APPELLANT'S BRIEF ON APPEAL

### Designation of Relevant Lower Court Documents

| Record Entry Number | | Brief Description | Page ID # Range |
|---|---|---|---|
| 1. | 1 | Complaint | 1-12 |
| 2. | 70 | Motion for Attorney Fees | 1055 – 1074 |
| 3. | 70-2 | Declaration of Counsel | 1078 – 1095 |
| 4. | 70-3 | Exhibit Timesheets | 1096 - 1106 |
| 5. | 70-4 | Exhibit Timesheets | 1107 – 1123 |
| 6. | 73 | Response to Motion | 1157 - 1164 |
| 7. | 73-1 | Exhibit to Response | 1165 - 1167 |
| 8. | 73-2 | Exhibit to Response | 1168 - 1179 |
| 9. | 73–3 | Exhibit to Response | 1180 - 1188 |
| 10. | 75 | Order resubmit Exhibit | 1198 - 1200 |
| 11. | 77 | Motion to Reconsider text order | 1228 - 1229 |
| 12. | 78. | Order Deny Motion to Reconsider | 1230 – 1233 |
| 13. | 79 | Response to resubmitted document | 1234 – 1238 |
| 14. | 80 | Order granting some attorney fees | 1239 – 1257 |
| 15. | 84 | Car Source Notice of Appeal | 1280 |
| 16. | 89 | Service of notice of appeal | 1292 |